## PAUL BUSTI and JOHN VANDERKEMP v. WESLEY BUDD, JOHN TUFFT, ARTHUR MILBY and BENJAMIN JONES.

Court of Chancery.  New Castle.  August, 1826.

*Ridgely's Notebook IV, 692.*

*Black* and *Rogers* for complainants.  *Booth* and *Read, Jr.,* for defendants.   .   .   .[1]

After the counsel of the parties respectively had read the bill, answers, depositions, and the documentary evidence, they submitted the cause without argument.

---

[1] At this point, *Ridgely's Notebook IV, 693*, the account of this case is interrupted; it is resumed at 738.

[*Bill in Chancery.*]

The bill states, that a number of persons associated under the name of the Holland Land Company and became owners in fee of large tracts of land in Pennsylvania. Paul Busti became their agent or attorney with powers to take care of, manage, and sell those lands, and receiving and taking security for the purchase money of land he might sell. J. J. Vanderkemp was associated with Busti for these purposes.

That Paul Busti in March, 1812, sold and conveyed to Oliver Wayne Ogden of New Jersey 140,000 acres of those lands, in the counties of McKean, Clearfield and Indiana in Pennsylvania, for the sum of $111,161.65 for securing which to be paid in annual instalments, they accepted of said Ogden's bond, and mortgage of the said premises so conveyed. That said Oliver Wayne Ogden failed in performing his engagement, paid no part of said purchase money, and some time after sold and conveyed the said 140,000 acres of land to Joseph McIlvaine, Esq.; and in June, 1814, on application made to complainants, they cancelled said bond and mortgage of said Ogden, and in place thereof received the bond of said Joseph McIlvaine for the purchase money, with his mortgage of the premises.

That McIlvaine failed in paying etc., and he sold and conveyed to Wesley Budd forty tracts of land, part of said 140,000 acres, and applied to complainants to take said Budd for amount for which said forty tracts had been sold Budd, and to release them from the mortgage given by McIlvaine, and to credit the amount of sales thereof, on his bond and mortgage. That complainants consented thereto, released said forty tracts from mortgage given by McIlvaine, allowed McIlvaine a credit on his bond and mortgage, and on June 24, 1817, accepted from his judgment bond for $57,836.00 in four equal instalments with interest, as by copy of said bond marked *A* annexed etc. That said bond was secured by a mortgage on said forty tracts given by Budd to complainants. That they also received from Budd his notes for $5,000.00, the arrears of interest due from McIlvaine on said forty tracts. That shortly after, Budd represented his difficulty in selling said land encumbered by the mortgage. That if they were released therefrom he could sell advantageously and meet the payments. That he had valuable land in Jersey, and in Sussex County, Delaware, which were in demand etc. That, confiding in Budd, it was arranged and agreed that the mortgage on said forty tracts given by Budd for said $57,836.00 should be cancelled on his conveying to complainants in trust eight tracts and three lots of

land in Jersey, and eight tracts in Sussex in Delaware, including wharves and mills, about 1,390 acres. Budd assured complainants, title to land in Sussex was free, etc.

That said eight tracts and lots of land in Sussex formerly belonged to Arthur Milby, who, with his wife, by two deeds conveyed the same in fee to Budd and John Tufft, and that afterward said Tufft released and conveyed his part or share of the same to Budd, his heirs, and assigns.

Complainants charge that a professional gentleman who had charge of said title papers, and who drew said trust deed, had in his possession and keeping, at the time of preparing said trust deed, said two deeds executed by Milby and wife, which bore date January 2 and March 12, 1817, and conveyed said eight tracts and lots of land in Sussex to said Budd and Tufft in fee as tenants in common. And said gentleman had, at same time in his possession a deed or release dated March 22, 1817, executed by Tufft and wife to Budd in fee for his, Tufft's, share of said eight tracts and lots of land in Sussex, which deed satisfied said person that Budd was seised in fee of said eight tracts and lots, who prepared said trust deed and recited therein said several deeds from the originals then before him etc. Said two deeds from Milby and wife to Budd and Tufft, and deed from Tufft and wife to Budd were returned to Budd.

That in pursuance of said arrangement complainants surrendered and cancelled the mortgage on said forty tracts of land in Pennsylvania for securing said $57,836.00 with interest and said Wesley Budd and Sophia, his wife, July 21, 1817, executed a deed of trust to complainants, conveying to them, among other things, the eight following tracts and lots of land in Sussex (here follows in the bill a description etc. of said eight parcels of lots of land) in trust and upon condition, that if said Budd should fail in paying to complainants said debt due from him to them, according to the consideration of said bond, complainants should sell said premises (together with the other lands conveyed) or as much as might be necessary to pay said debt and interest and costs of sale for the best price etc. and apply the proceeds to payment of said debt and interest until the whole should be paid, and balance if any to pay over to Budd. A copy of said deed is annexed to the bill marked *B*.

(p. 8.) That some [time] after said conveyance of said eight tracts and lots, Budd became embarrassed, and from secret understanding between him and Tufft as is believed and charged, intended to promote the interest of Tufft, and to impair the title of complainants to the tracts and lots so conveyed to them, and to

defraud them. Budd, colluding with Tufft, has refused to deliver to complainants the deed of release executed by Tufft and wife, releasing and conveying his interest in said eight tracts of land and lots to Budd, presuming that as it was not recorded its suppression would deprive complainants of a link in their chain of title, etc.

(pp. 8–9.) That complainants have heard and believe that about March 9, 1818 (at which period Budd executed an assignment of all his property to his creditors as hereafter mentioned), Budd fraudulently returned to Tufft the said deed of release, and that since Tufft has thus obtained possession thereof he has set up a claim to the two third parts of said eight tracts and lots of land in Sussex, falsely pretending that he never parted with his right therein; and he has, as complainants have heard and believe, applied to the Court of Chancery in Sussex for partition thereof, and an allotment of two-thirds thereof to him.

(p. 9.) That said deed of release, as complainants believe and charge, [was] at one period, in the possession of Benjamin Jones of Philadelphia, a friend of Budd, by whom it had been delivered to said Jones, with other papers of said Budd, and that it was returned by Jones to Budd for the purpose of preparing said deed of trust.

(p. 10.) That Milby now claims the whole of said eight tracts of land in Sussex; that he alleges that Budd, by indenture dated March 31, 1817, for valuable consideration conveyed the whole of said eight tracts of land and lots in Sussex to the aforesaid Benjamin Jones; and that said Jones on December 15, 1818, conveyed said premises to him (Milby) in fee, and that by virtue of said conveyances he claims those eight tracts as his property. That it cannot be expected that complainants should explain all the difficulties, etc., with which their title is embarrassed by the crooked course pursued to defraud them, etc.

(p. 11.) Complainants charge that Budd in 1817 entered into a negotiation with Benjamin Jones of Philadelphia to convey to him the said eight tracts of land in Sussex, in exchange for property belonging to said Jones, and which he was to convey to Budd. That Budd had a deed prepared conveying said eight tracts to Jones, and, as Budd and his wife resided in the State of New Jersey, it was decided that the deed should be executed by Budd and his wife, and taken by him to Philadelphia, and there delivered to Benjamin Jones, on his fulfilling his part of the contract. That accordingly about March 31 in the year last aforesaid (1817), Budd and wife signed and sealed said deed, and acknowledged the same before a judge in New Jersey, but it was not de-

livered to said Benjamin Jones, or any one on his behalf, but remained in possession of said Budd. That on further communication between said Budd and Jones it was agreed by them to rescind said contract; that this was done some months before the execution of the trust deed aforesaid, and the said deed signed by Budd and wife conveying the premises to Jones was not delivered or placed in the possession of Jones, but remained with Budd in whom the title of the lands aforesaid was still fully and legally vested.

(p. 12.) Complainants charge that said last mentioned deed remained in the possession of Budd until about March 18, 1818 (long subsequent to the conveyance of said lands to complainants), at which time Budd, by his indenture duly executed, assigned and conveyed all his estate real and personal to said Benjamin Jones for the benefit of such of his creditors as should within three months release him from the debts due from him, giving to said Jones a preference or priority of payment out of his estate to the extent of $114,656.00, a true copy of which deed of assignment marked D is annexed. That at the time of the execution of said deed of assignment or within a few days thereof, said Budd gave to said Jones the deeds and title papers belonging to his estate and that at this time, by mistake or inattention, the said deed signed by Budd and wife and dated March 31, 1817, conveying said eight tracts of land in Sussex to said Jones, was, with the title papers and deeds with which it had been kept, handed to said Jones. That this was the first period, as complainants charge, at which Jones had possession of said deed, and then it was handed to him by mistake, and without any consideration given therefor; long prior to which time, said premises had been conveyed to complainants and that conveyance recorded in Sussex, in the proper office, and said Jones was, at the time of the assignment and receipt of said deed fully apprised of the conveyance to complainants the year before.

(pp. 12–13.) That sometime after Jones had thus obtained said deed, he was induced, under the color of title apparently given him by said deed, to convey said eight tracts of land, to said Arthur Milby, without consideration or for a very trifling sum, as both those persons (Jones and Milby) well knew, as complainants charge, that said pretended deeds to Jones for said lands, was without consideration, invalid, and gave no title, and that said lands had been long before conveyed to complainants by said Budd and the deed recorded, and that no delivery of the deed under which Jones claimed had ever been made.

(p. 13.) That Milby obtained possession of said eight tracts of land, and now holds the same as belonging to him under title

from Jones. That Milby, as complainants have been informed and believe, is wasting the timber and trees etc. That said deed from Budd and wife to Jones was not recorded within the State of Delaware within one year after its execution, and that nearly two years had elapsed before the same was placed on record, and not until upwards of nineteen months after said lands had been conveyed to complainants, nor until more than sixteen months after the conveyance to complainants had been regularly recorded.

(p. 14.) That said Benjamin Jones did not record said deed after Budd failed, but suffered it to rest among his papers nearly a year, after Budd's assignment of all his property; and it never was recorded until Jones had failed, and assigned his property for the benefit of his creditors; and then for the first time, as complainants charge, it was recorded by order of said Arthur Milby, who professed himself of it, and not by order of Jones, who knew the deed was worth nothing. (He refers to the certificates of the recorder, C and G.) That Joseph McIlvaine in December, 1817, conveyed to Budd the residue of said 140,000 acres of land. That there were then due to McIlvaine, to complainants, $53,325.65 of principal, and $11,978.40 of interest on his bond. That complainants were prevailed on to take Budd for those sums, and cancel the bond of McIlvaine, and enter satisfaction on the mortgage given by McIlvaine and on December 20, 1817, complainants gave up to McIlvaine said bond and mortgage, and took from Budd his bond of that date for $53,325.65 in annual instalments with interest, and his notes indorsed by B. B. Cooper for $11,978.40.

(p. 15.) That on the day and year last aforesaid said Budd, to further secure said money, executed another deed of trust, conveying to complainants other lands in New Jersey, of the same nature and condition with the deed of trust before mentioned, a copy of which is annexed, except that it was for securing a different debt. That complainants were taught to believe by Budd, that he had sold, or contracted to sell, the greater part of his last purchase from McIlvaine to wealthy farmers of New Jersey, taking from them, in part payment, their improved lands, at a moderate valuation, which would be by him conveyed or mortgaged to complainants to secure the payment of the last mentioned bond, as soon as the sales could be completed; and that, until this could be effected, the said deed of trust was proposed and agreed to. That, trusting in Budd, they, at his request, indorsed upon each of said deeds of trust, a memorandum declaring it to be lawful for said Budd to sell said trust, estate, or any part thereof, and they would join said Budd in conveying the

same, to enable him to make a legal conveyance, stipulating therein that the money received on such sales should be paid to complainants, or if the sale was made on credit that the bonds and mortgages taken for the purchase money, should be taken in the names of complainants, or if in the name of Budd that they should be immediately assigned by him to them, as a true copy annexed to the bill. Memorandum was carelessly drafted, and signed without consideration. No suspicion.

(p. 16.) That said Budd, about the time of his failure, or very shortly before, to defraud complainants entered into a contract with Joshua Brick (copy annexed, *H*) for the sale of the greater portion of the lands in New Jersey conveyed as aforesaid to complainants (comprising the valuable glass works at Millville, and the valuable parts of those lands) for $11,000.00, though they had been estimated to complainants at nearly ten times that amount. That said Brick claimed said lands, and, in order to get rid of that claim and others which arose by reason of Budd's assignment to Benjamin Jones, and of the subsequent assignment by Jones to Mark Richards and William E. Howell, and also of the authority Budd might still claim to exercise under said memorandum, to make considerable sacrifice. These sacrifices were made, and, in consideration thereof, complainants obtained from Budd, Jones, Richards, Howell and Brick, and also from Isaac Townsend and wife a release of all right and interest in said lands in Delaware and New Jersey, and all right and power by virtue of the memorandum annexed to each of the trust deeds, as by copy of said release *E*.

(p. 16, margin.) That to obtain said release complainants released all claim to the eight first tracts of land in New Jersey mentioned in the first trust deed, consisting of 5,084 acres and to 349 acres conveyed by second trust deed.

(p. 16.) That said Benjamin Jones shortly after the date of his said deed to Milby was compelled to transfer his property to his creditors, which transfer was made February 5, 1819, to Mark Richards and William E. Howell of Philadelphia, and included his own absolute property, and that which had been conveyed to him by Budd by his deed of general assignment before stated, as by copy *F*.

(p. 17.) That the two bonds so as aforesaid given by Budd stipulated for the payment of $111,161.65 with interest, no part of which has been paid by Budd, but the whole is still owing (due). That the only fund for payment of that debt is the land conveyed by said trust deeds, as complainants expressly charge. That said Budd is insolvent. That the first instalment of the

first said bonds (being $14,459.00) became due April 1, 1819. And complainants were about to expose to public sale, according to the first trust deed, the said eight tracts and lots of land in Sussex, and apply the proceeds to the payment of the debt due to them. That complainants, discovering that two-thirds of said lands and lots were claimed by John Tufft (who denied ever having conveyed his interest to Budd) and that the whole of said lands and lots were claimed by Arthur Milby under said deed from Budd to Jones and the deed from Jones to himself, and being advised it would not be correct or legal for them as trustees to purchase in the trust estate, could not sell with the expectation of receiving near its value until these fraudulent claims were put at rest, and the title of complainants substantiated, by said deed of release and conveyance from Tufft and wife to said Budd being placed in the possession of complainants. And by the said deed from Budd and wife to Jones, dated March 31, 1817, being delivered up and declared null.

(p. 18.) And your [complainants] well hoped that said John Tufft and Arthur Milby, knowing the premises, etc. But now so it is, etc. In tender consideration whereof, etc. To the end therefore that the said Tufft, Milby, Budd and Jones etc.

(p. 25.) The bill prays that Budd, Jones, Tufft, and Milby may be compelled to annex to their answers: the originals of said two deeds from Milby and wife to Tufft and Budd; the deed of release from Tufft and wife to Budd; the original deed of assignment from Budd to Jones; the deed of assignment from Jones to Mark Richards and William E. Howell; the original deed from Budd to Jones dated March 31, 1817; and the aforesaid deed from Jones to Milby;—or true copies of those respective papers. And that the originals thereof they may be compelled to produce before this Court at the hearing this cause.

Complainants aver and declare that neither the said deed of release from Tufft and wife to Budd, nor said deed from Budd to Jones dated March 31, 1817, are in custody or power of complainants, or either of them, and they do not know in whose custody or power they are, unless in the hands of defendants before named, or some of them.

Prayer. That the said confederates may be compelled to deliver to complainants fair, safe, and uncancelled, the aforesaid deed of release or conveyance from the said John Tufft and wife to the said Wesley Budd, and that the grant or release contained in the said deed of release and conveyance, if the same should be lost, destroyed or suppressed, may be established by the decree of this Court; and that the said John Tufft may be com-

pelled to convey to complainants in fee simple the aforesaid eight tracts and lots of land in Sussex County aforesaid mentioned and described in the said deed of release and conveyance (and also in the aforesaid deed of trust to complainants) and all his right, title, interest, and claim in and to these premises and every part thereof; and that the said confederates may be compelled to bring into court the aforesaid deed from Wesley Budd to Benjamin Jones bearing date March 31, 1817, and also the said deed or conveyance from Benjamin Jones to Arthur Milby, and that the same may be severally cancelled; and that the records of the said two deeds last mentioned may, by a decree of this Court, be respectively vacated and made null and void. And that the said Arthur Milby may be compelled to come to a fair and just account with your orators for the rents, issues and profits of the aforesaid premises in Sussex County; and also for all wood, timber, and trees cut upon the said premises for sale and sold, or carried off for sale; and that the said A. Milby may be further compelled to deliver unto complainants quiet and peaceable possession of all the said premises. And that complainants may have the benefit of an injunction, etc. And for general relief.

---

Annexed to the bill are copies of the following instruments of writing:

### A

June 24, 1817. Bond. Wesley Budd to Paul Busti and J. J. Vanderkemp. $115,672.00 conditioned to pay to the obligees etc. $57,836.00 as follows: one-fourth on April 1, 1819; another fourth on April 1, 1820; another fourth on April 1, 1821; and the remaining fourth on April 1, 1822, with lawful interest of Pennsylvania annually for the same.

June 24, 1817. A warrant of attorney to confess judgment on said bond.

July 21, 1817. Wesley Budd and Sophie, his wife, to Paul Busti and J. J. Vanderkemp. Indenture.

### B

This indenture recites the aforesaid bond bearing date the twenty-third day of June last past. It conveys eight several tracts or parcels of land situate in Sussex County, describing them particularly, to Paul Busti and J. J. Vanderkemp in fee simple. The deed recites that the said tracts of land lately belonged to a certain Arthur Milby, who, with Rhoda, his wife, by two deeds dated January 2 last past, conveyed a part thereof to

Wesley Budd and John Tufft, and, by another deed dated March 12 last, conveyed the residue thereof to Budd and Tufft. And the said John Tufft and Mary, his wife, by deed dated March 22 last past, released and conveyed all his part on share thereon to the said Wesley Budd. The same deed also conveys eight parcels of land situate in the County of Cumberland, and County of Gloucester, in New Jersey to the same grantees in fee. In trust that if Budd should fail in paying said debt according to the condition of said bond, then that the grantees should sell said lands or as much as might be necessary to pay said debt, etc. etc. etc.[2]

On the aforesaid indenture the following memorandum was made under the hands and seals of Paul Busti and J. J. Vanderkemp, July 21, 1817, and written on said indenture:

### *Memorandum.*

To enable Wesley Budd to pay the debt within mentioned from the trust estate it is hereby agreed on the part of the said Paul Busti and J. J. Vanderkemp that it shall be lawful for him the said Wesley Budd to sell the said trust estate or any part thereof, and that they will join him in conveying the same to the purchaser, or reconvey the part sold to said Budd, so that he may make a legal conveyance thereof. But that the money received on account of sales shall be paid to them, or if the sale be on a credit, the bonds and mortgages taken for securing the payment of the purchase money, shall be either made to them in their own names, or if given to said Budd shall be by him immediately assigned to them and accepted as security for said debt instead of the property sold. And when paid a credit shall be indorsed accordingly on said Budd's bond, and an indorsement of said transfer shall be made on the said trust deed. Given under the hands, etc.

### *C*

February 10, 1820. Certificate of Jehu Stockley, Recorder of Deeds in Sussex County, that there was recorded in his office on October 27, 1817, a deed from Wesley Budd and wife to Paul Busti and J. J. Vanderkemp conveying therein five several tracts

---

[2] Note by Ridgely, "This deed was acknowledged by the grantees Budd and wife, that they signed, sealed, and delivered the same for the uses and purposes therein expressed, July 21, 1817, before Joseph McIlvaine, one of the Masters of the Court of Chancery of the State of New Jersey, and the private examination of the wife was made before the said Master in Chancery. *Quaere,* whether this acknowledgment was sufficient? Ought it not to have been proved? Was a Master in Chancery a proper officer to take the acknowledgment or proof of the execution of the deed? Had he authority to examine the wife."

of land and a certain sawmill, and one acre of land situate in Sussex County, also a house and lot and certain wharves, store-houses and granaries and lots of ground whereon they stand situate in the Village of Milton at the head of Broadhill Creek. Also one other deed from the said Wesley Budd to Benjamin Jones on the 23rd June, 1818, and dated the eighteenth day of March, 1818. And also one other deed from Benjamin Jones to Arthur Milby on January 7, 1819, dated December 15, 1818, and acknowledged before Robert Wharton, Esq., Mayor of the City of Philadelphia on December 16, 1818.

The following note added to Mr. Stockley's certificate is in the handwriting of James R. Black, Esq., and signed J. R. B.:

> The deed from Wesley Budd to B. Jones mentioned in the above certificate is the deed of assignment assigning all property real and personal to B. Jones.

## D

Indenture March 18, 1818. Wesley Budd and Sophie, his wife, to Benjamin Jones. Consideration, one dollar. This is a deed assigning all Budd's estate, real and personal, and rights and credits to Jones for the use of his, Budd's creditors.

## E [3]

January 7, 1820. Indenture between Wesley Budd, of the first part; Benjamin Jones, assignee in trust of the estate of Wesley Budd, of the second part; Mark Richards and William E. Howell, assignees in trust of certain estates of said Benjamin Jones, of the third part; Isaac Townsend and Hannah, his wife, of the fourth part; Joshua Brick, attorney in fact of said Wesley Budd, of the fifth part; and Paul Busti and J. J. Vanderkemp of the sixth part. (This is the deed referred to in the bill, page ——.)

## F

Indenture, February 5, 1819. Benjamin Jones and Mary, his wife, to Mark Richards and William E. Howell. This deed recites that the grantor is seised and possessed of real and personal property in the State of New Jersey and the State of Delaware which he is desirous of applying to the payment of certain of his creditors. In consideration of the premises and of one dollar, he conveys by this deed all his estate, real and personal, in New Jersey and Delaware to Richards and Howell for the use of his creditors. And in this deed Jones assigns to Richards and Howell all the estate, property and effects, and

---

[3] In the manuscript this item follows item H.

all the powers and authorities granted and conveyed to him by Budd March 18, 1818, under the same trust and for the same purposes as are mentioned in Budd's assignment, and all monies which they may receive and to which Jones would be entitled under the assignment of Budd, they, Richards and Howell, are to pay to the creditors of Jones.

## G

February 15, 1820, certificate of Jehu Stockley, Recorder of Deeds in Sussex County, that there is recorded in his office a deed from Wesley Budd and wife to Benjamin Jones dated March 31, 1817, and recorded March 3, 1819, conveying to Jones five several tracts of land, and a certain sawmill and one acre of land situate in Sussex County aforesaid. Likewise a house and lot of ground, and certain wharves, storehouses and granaries and lots of ground whereon they stand in the Village of Milton at the head of Broadkiln Creek in said County of Sussex.

## H

November 2, 1818, articles of agreement between Wesley Budd and Joshua Brick, by which Budd agrees to sell to Brick in consideration of $11,000.00, all the lands in New Jersey which Budd and Sophie, his wife, by their deeds dated July 21, 1817, and December 20, 1817, had conveyed to Paul Busti and J. J. Vanderkemp in trust in virtue of the memorandum indorsed on the deed of July 21, 1817.

### *Answer of John Tufft.*

He knows nothing of the transactions stated in the bill previous to Milby's sale of land to this defendant and Budd.

(p. 2.) He admits that the eight tracts and lots of land in Sussex, in the trust deed described, once belonged to Milby; that Milby and wife by two deeds, about January 2, 1817, conveyed said premises, except the two hundred and forty acre tract, to this defendant and Budd in fee as tenants in common, that is, two undivided third parts thereof to be held by this defendant and one-third by Wesley Budd. He admits that about March 12, 1817, Milby and wife by one deed conveyed said two hundred and forty acres to this defendant and Budd in fee as tenants in common to be held in the proportions aforesaid, as by said three deeds recorded in Sussex.

(p. 3.) Defendant insists that by said three deeds he has title to two undivided third parts of said lands. This defendant then

goes into a recital of the circumstances attending his purchase of the two undivided third parts of said premises.

(p. 7.) On December 14, 1816, article of agreement drawn, and executed by Milby of the one part, and Budd and this defendant, of the other, by which it was agreed that in consideration of $26,000.00 in dry goods, groceries, cash and notes, Milby was to convey within the times therein mentioned the lands in Sussex, described in the trust deed, to Tufft and Budd in fee, in the proportions aforesaid as tenants in common. Dry goods to be taken at invoice price; before executing the articles, the dry goods were examined and ascertained to be worth $18,000.00, and immediately after executing said articles, this defendant delivered to Milby his whole stock of dry goods, to the amount of $18,-000.00, without ever having seen the land or been in Sussex.

(p. 8.) He refers to counterpart of said articles executed by Milby, with his receipt for said dry goods written underneath. Budd never paid nor delivered anything to Milby on account of consideration expressed in said articles, and this defendant does not believe that he ever paid or delivered anything at any time, or that it was intended by Milby and him that he ever should do so.

(p. 9.) Defendant visited [the] lands. He then saw the fraud of Budd and Milby; threatened to expose Budd by legal proceedings. Budd excused himself: error in judgment; believed the lands to be of the value first stated; proposed to take the whole of the Sussex lands and give others in New Jersey in exchange and equal in value to this defendant's stock of dry goods. This defendant assented. Milby came to Philadelphia and delivered to Budd the two deeds of January 2, 1817. And after execution of the deed of March 12, 1817, he delivered that also to Budd. Afterwards this defendant went to New Jersey with Budd; was satisfied with the quality of the lands but there was a defect in the title, and there were several liens on them. Budd promised to convey them clean of all incumbrances and to make a good title. On consideration of Budd's performing this promise, this defendant agreed to convey all his interest in the Sussex lands.

(p. 10.) Defendant and Budd signed a short note in writing stating the agreement to be of the purport and effect mentioned, which note was left with Budd. Defendant frequently urged Budd to convey the lands in New Jersey according to agreement, yet, feeling great security from Budd's wealth that he could make a good title and convey them clean of incumbrances, defendant permitted the business to be postponed and evaded until

about March, 1818, when defendant understood that Budd became a bankrupt.

(p. 11.)   Defendant then had to look after the lands in Sussex. None of the three deeds had been recorded, and knowing that Budd had received the three deeds from Milby, he requested of Budd their delivery, that he might have them recorded, and claim the two-thirds.   Budd at first refused, but afterwards he delivered them to this defendant, who went to Sussex and had them recorded, September 9, 1818.   They now are in this defendant's possession.   This defendant denies that he and his wife, or that he alone on March 22, 1817, or any other time, ever signed sealed or delivered any deed or deeds of any description to said Budd, or to any one on his behalf for conveying or releasing the right, title, interest, or claim of this defendant in or to the aforesaid lands and premises in Sussex;   and he avers that if any such instrument of writing be in existence, or if there ever were any such, purporting to be a deed to that effect, it never was the deed of this defendant but the same must have been fraudulently made and used as such.

(p. 12.)   This defendant knows nothing of the trust deed, nor of the terms on which it was made, nor when it was made or recorded.   Nor has he any knowledge of any negotiation on the part of Budd to convey to Jones the lands in Sussex.   All he knows is this.   In April or May, 1818, in Jones's office in Philadelphia, Jones mentioned that he had a deed from Budd to him for the lands in Sussex, and produced an instrument of writing purporting to be such deed, and bearing date March 30, 1818. Defendant [was] surprised that Budd should have undertaken to sell the whole lands in Sussex, when he owned but a third; and in the conversation he acknowledged more than once that he considered the deed as worth nothing, and that it conveyed [no] title whatever to him for the lands, and that he would convey the same to this defendant for $60.00, or a smaller sum.   Defendant answered that he was owner of two-thirds and that Jones was deceived, etc.   This conversation was in the presence of Edmund J. Hollingshead of Philadelphia.   Milby is in possession of the land;   has cut and sold one thousand cords of wood, etc.

---

January 2, 1817.   Indenture, Arthur Milby and Rhoda, his wife, to John Tufft and Wesley Budd.   Consideration: $17,250.-00.   This deed conveys several parcels of land in Sussex County, also a sawmill and one acre of land with the buildings thereon and the pond, to Tufft and Budd as tenants in common in fee.

Tufft to hold two undivided third parts thereof in fee, and Budd one undivided third part in fee. Milby covenants that the first four parcels of said land contain at least 1150 acres, and that they, with another parcel of 240 acres, contain at least 1390 acres, and that the premises are free from incumbrances. Acknowledged etc. the same day before two justices of the peace. Recorded September 9, 1818.

January 2, 1817. Indenture, Arthur Milby and Rhoda, his wife, to John Tufft and Wesley Budd. Consideration: $4500.00. This deed grants to Tufft and Budd wharves, a storehouse, granaries, dwelling-house and lots of ground, and the appurtenances to them in fee as tenants in common; Tufft to have two undivided third parts thereof and Budd one. Free from mortgages etc. Acknowledged the same day before two justices of the peace. Recorded, September 9, 1818.

March 12, 1817. Indenture, Milby and wife to Tufft and Budd as tenants in common in fee; Tufft to hold two undivided third parts thereof, and Budd one. Consideration $4,250.00, 240 acres, free from all mortgages etc. Same day acknowledged before two justices of the peace. Recorded, September 9, 1818.

----

### Answer of Arthur Milby.

This answer begins with a proposition made by John Logan to Milby about the exchange of lands for goods, and then it gives this defendant's account of that transaction. It commenced in 1816. Milby went to Philadelphia in November, 1816, and was introduced to Tufft by Logan. After a disagreement about terms, Milby invited Tufft to Milton. He declined.

(p. 2.) A second meeting at an oyster supper—disagreed. A few days after, Tufft came to Milby's lodgings and brought Budd.

(p. 3.) Articles in writing executed, by which, in consideration of $26,000.00 in dry goods, groceries, cash and notes, Milby agreed to sell to Tufft and Budd the lands in Sussex mentioned in the bill, containing about 1300 acres; also wharves, storehouse, granaries, lots and mill seat, except a tract of 240 acres, conveyances to be made within sixty days. Two-thirds to Tufft in fee, one-third to Budd, as tenants in common. Dry goods to be paid by Tufft $18,000.00; groceries by Budd, $1,000.00; at execution of deeds $2,000.00 in cash and balance in notes. Dry goods delivered by Tufft.

(p. 4.) January 2, 1817. Milby and wife executed two deeds to Tufft and Budd for the lands to be conveyed within sixty days.

On January 5, 1817, Milby went to Philadelphia; tendered himself ready to deliver the deeds upon receiving the money and notes. Objections. Tufft then informed Milby that he was on a contract to convey his interest in said lands to Budd. Tufft set off for Milton about January 8. Milby followed, and next day they met at Smyrna where were with Tufft, his friends, Joel Naines and Daniel Dancy. The Saturday following they were all at Milton and were entertained at defendant's house several days. Two days employed in viewing lands and property. Tufft satisfied, and afterward purchased one hundred acres for $900.00 cash and his judgment bond for $900.00 more.

(p. 6.) Deeds again tendered, which Tufft refused, and repeated his intention to convey to Budd for lands in Jersey. After this defendant and wife had executed the deed of March 12, 1817, for the 240 acre tract, he went to Philadelphia and offered all the three deeds to Tufft, provided Tufft with Budd, or either, would fulfil their part of the contract. Tufft refused to receive said deeds, and proposed that Milby should have other deeds prepared and executed so that he might convey the whole of said premises to Budd, which Milby refused. Tufft then requested him to deliver the deeds to Budd and observed that he was going to Jersey. On March 19, 1817, Milby delivered said three deeds to Budd, who informed him that Tufft had gone to Jersey to view the lands which he, Budd, was to convey to Tufft for his interest in the lands granted in these deeds. After Budd received the deeds he followed Tufft into Jersey, and in a few days they returned to Philadelphia and both informed Milby that Tufft had conveyed his interest in the Sussex lands to Budd, and this defendant understood that Tufft was to take lands in Jersey for his share of the lands in Delaware.

(p. 7.) That when Milby delivered deeds, Budd delivered him a note drawn by Budd and indorsed by Tufft for the $2,000.00, which were to have been paid in cash; and having up to that time received on $18,000.00 in Tufft's dry goods, and $1,089.[0]8 in groceries of Budd, and said note for $2,000.00, there yet remains due to Milby $4,910.92, beside interest, which sum and interest, as defendant has not parted with the possession of said lands, and as complainants never demanded the same, or made inquiry of defendant respecting the same, notwithstanding the deeds obtained from him as aforesaid, he insists ought to be paid to him before any creditor of Budd seeking equity out of said premises by reason of any trust deed, even if title under Jones is void. Many of Tufft's goods were damaged etc. Believes Logan was to have of Tufft $300.00. This concealed from

defendant, though defendant never denied that he was to give Logan $500.00 on consideration aforesaid.

(p. 8.) That after Tufft had been to Milton as aforesaid, and after he had informed this defendant that he had parted with his right in the said premises, *viz* about April 17, 1817, this defendant sold him a sloop for which he signed two judgments each for $1,145.00, which Milby failed in recovering. He took out November 20, 1817, two writs of foreign attachment against Tufft in Sussex. Sheriff attached the sloop. Milby went to Philadelphia was then sued by Tufft. Bail, $1,000.00. Milby would not give up his claim. Tufft obtained further delay by giving his notes, which next year were paid without any claim for the rents of said lands.

(p. 9.) Tufft discontinued his suit in Philadelphia. Milby believes, and believes it can be proved, that Tufft for a valuable consideration conveyed his share in the Sussex lands to Budd in fee, and that deed is dated a few days after March 22, 1817.

(p. 10.) Milby believes that Budd and wife, for valuable consideration, March 31, 1817, conveyed to Jones, for a good and valuable consideration, in fee, the whole of said lands and premises, and defendant denies that Jones obtained or held said deed by fraud, or in the manner set forth by complainant. He cannot state particular consideration, but has been informed and believes that Budd was largely indebted to him, Jones, on which account said conveyance was made. Defendant admits that before he purchased of Jones he had been informed that the trust deed dated July 21, 1817, had been recorded in Sussex, but cannot answer, and does not admit, that such deed had been executed. But defendant is advised that such trust deed, if executed, could not be recorded, as it had not been properly proved or acknowledged.

(p. 11.) This defendant has been informed that Jones was in possession of said three deeds, and of Tufft's deed to Budd, and that Jones confided those deeds to Budd to have recorded. That some time after, Tufft sued Budd in Cumberland County, New Jersey, to June Term, 1818. Bail, $2,076.10 only. And that Budd delivered to Tufft the deeds he had received of Jones, and suit was discharged.

(p. 12.) And Tufft, September 9, 1818, had said three deeds (for lands in Sussex) recorded; and then for the first time demanded possession of said lands of this defendant and payment of two-thirds of the rents and profits thereof. This defendant has been informed by Jones that the cause of action by Tufft against Jones was thus: Tufft had indorsed a note by Budd to

Jones for $2,000.00, which Tufft agreed to pay if Jones would convey to Tufft a part of the lands in Jersey which Budd had conveyed to Tufft in exchange for two-thirds of the lands in Sussex; that Jones executed such deed to Tufft.

(pp. 12-13.) Here Milby details a conversation with Jones about Tuffts deed on release to Budd, etc.

(p. 13.) That Tufft and Budd still owe to Milby a balance of the purchase money and interest. That Budd being largely [indebted] to Milby in another sum, Milby had attached personal property, several ore beds. He proposed to purchase Jones's title and to assign to him said attachment. And Milby assigned said ore beds and personal property to Jones, and Jones and wife, December 15, 1818, made a deed to Milby (for said Sussex lands) and on December 16 acknowledged the same.

(p. 14.) This defendant at the time of his purchase of Jones was ignorant of the manner in which it is alleged by complainants that Jones obtained the deed of Budd and wife, March 31, 1817, and that if the same remained in possession of said Budd after the date thereof, this defendant was never informed of it, until he found it so stated in the bill of complaint, therefore defendant is a purchaser for a valuable consideration and without notice of any fraud.

(p. 15.) January 17, 1819, deed of Jones and wife recorded. March 3, 1819, deed of Budd and wife to Jones recorded. Some argument that the trust deed being taken within four months after the deed of Budd to Jones, that the title of Jones was then good, and that neglect in recording the deed did not impair the legal effect thereof, and could not give more equity to complainants against an innocent purchaser without notice.

(p. 16.) That this defendant has ascertained that Budd and wife after March 22, 1817, conveyed by deeds duly executed, acknowledged, and recorded divers tracts of land in Jersey to Tufft in fee, the consideration of which as expressed in said deeds is $19,000.00, which defendant believes was to satisfy Tufft for his share in the Sussex lands, and which consideration defendant believes was more than Tufft's interest in the said lands. That on November 15, 1819, Milby filed a bill against Tufft and Budd, for discovery, in Sussex. Tufft answered, which is false. This answer then proceeds with an account of a suit brought by Tufft against Milby in Philadelphia and of its discontinuance.

(p. 18.) That Milby is a stranger to the matters charged in this bill of complaint etc.

(p. 19.) This defendant is advised that complainant has not shown in his said bill any right to demand an account touching rents, wood, timber. And that as the said lands and premises are situate in Sussex County, as the jurisdiction of this Court does not extend over the state, the complainants have no right to question defendants touching any of the matters set forth in the said bill of complaint.

And defendant denies all combination etc., etc.

----

March 31, 1817. Wesley Budd and Sophie, his wife, to Benjamin Jones. Consideration, $26,000.00. This deed conveys in fee to Jones the eight parcels and lots of land which "John Tufft and Wesley Budd purchased of Arthur Milby and Rhoda his wife as tenants in common and not as joint tenants, *viz* two undivided third parts unto John Tufft his heirs and assigns and one undivided third part unto Wesley Budd his heirs and assigns by deeds dated January 2, A.D. 1817 and March 12, A.D. 1817, and which said undivided two third parts Wesley Budd purchased of John Tufft by deed dated March 22, 1817. Reference thereunto being had it may more fully and at large appear." This deed is written sealed and delivered in the presence of Thomas C. Budd, Eli Budd. It was acknowledged by the grantors March 31, 1817, before Eli Budd, "one of the Judges of the Inferior Court of Common Pleas in and for the County of Cumberland." There is a certificate dated February 16, 1819, given by Ebenezer Seeley, "Clerk of the Court in and for the County of Cumberland, State of New Jersey," that Eli Budd was, at the time of the execution of the deed a judge of the court in and for said county. This is under [the seal] of his office. There is another certificate given by James Linn, Secretary of the State of New Jersey dated February 20, 1819, under his hand and official seal, that said Eli Budd was at the time of taking said acknowledgment one of the judges of the Court of Common Pleas in and for the County of Cumberland in said state, and that Ebenezer Seeley was Clerk of said Court. Recorded in Sussex County March 3, 1819.

December 15, 1818. Deed, Benjamin Jones and Mary, his wife, to Arthur Milby, for same lands and lots. Consideration, $7,-000.00. Acknowledged etc., before Robert Wharton, Mayor of Philadelphia, December 16, 1818. Recorded, February 7, 1819.

Record of attachment in the Court of Common Pleas, Sussex, Arthur Milby *v.* Wesley Budd.

THE CHANCELLOR delivered the following opinion:

In the decision of this cause it is not necessary to inquire how the contract between Milby, on the one side, and Tufft and Budd, on the other, originated. Enough is admitted in the several answers to show that a contract was made, and that the conveyance of the several parcels of land in Sussex County was completed by the execution of the three several deeds made by Milby to Tufft and Budd, in January and March, 1817, and delivered, according to Milby's answer, to Budd, on the 19th of the same month of March. Tufft says that the deeds made in January were delivered to Budd in January, and that the deed of the 12th March was delivered to Budd in March. No controversy can exist in relation to these deeds. They were properly acknowledged and were recorded in due time; and the complainants rest their claim upon them, and these defendants admit them, in their answers, in the fullest extent. Indeed all the parties in this cause make title under them.

It is alleged in the bill and in Milby's answer that Tufft and wife conveyed to Budd, on the 22nd of the same month of March, his two undivided third parts of the said several parcels of land, in fee, and that Budd thus became seised of the whole of these lands. Tufft in his answer denies that he and his wife, or that he alone, on March 22, 1817, or at any other time, ever executed any deed or deeds of any description to Budd, or to anyone on his behalf, for conveying his interest or estate in the said lands; and he avers that if any such instrument is in existence, or if there ever were any such, purporting to be a deed to that effect, it never was his deed, but that the same was fraudulently made and used as such. He also says that he reproached Budd for inducing him to purchase these lands, and that Budd, after excusing himself, and professing his sincerity in this business, "proposed to take the whole of the Sussex lands, and to give others in New Jersey in exchange, and equal in value to his stock of dry goods." This was after Tufft had been into Sussex and viewed the lands, and before the delivery of the two deeds made in January.

Afterwards Tufft went to Jersey to view Budd's lands there, and an exchange was agreed on, and Tufft and Budd signed a short note or memorandum in writing stating the agreement to be of the effect and purport mentioned, which memorandum was left with Budd. Finally Budd failed, and no exchange was made. Then it became an object with Tufft to secure and preserve the deeds made by Milby. This is Tufft's account of the transaction in relation to the exchange said to have been made by him and

Budd. When we consider this answer (although it positively denies that Tufft made any deed to Budd) and the testimony of McIlvaine, Brick and Townsend, I cannot resist the conclusion that Tufft did make such a deed to Budd.

In his answer he speaks of his dissatisfaction with the purchase, and of his discontent with Budd in influencing him to make it. Budd, on being reproached by Tufft, proposed to take the whole of the Sussex lands, and to give in exchange others in New Jersey equal to his stock of dry goods bartered with Milby. The offer pleased Tufft, and he gladly assented to it. Milby about this time went to Philadelphia, and the two first deeds were delivered to Budd, and afterwards the third; and it may be fairly inferred that this arrangement was the cause that the deeds were delivered to Budd. Milby says, in his answer, that Tufft refused to receive them, and proposed that other deeds should be prepared and executed, so that the whole of the premises should be conveyed to Budd. This was properly refused by Milby, and then Tufft requested him to deliver them to Budd, and observed that he was going to Jersey. Tufft says that he did go to Jersey with Budd, and was satisfied with the quality of the lands there, but that the title was defective, and that there were liens on them. Budd promised to convey them clear of all incumbrances, and to make a good title. On these terms Tufft agreed to convey all his interest in the Sussex lands; and he and Budd signed an agreement in writing to this effect, which was left with Budd.

So far the answers of Tufft and Milby substantially agree; and it is evident that Tufft relied upon the Jersey lands to repair the loss which he supposed he had incurred by his purchase of Milby; and the delivery of the deeds to Budd, with the knowledge and approbation of Tufft, may be considered as his act, carrying into execution the contract with Budd. Tufft, it is true, assigns no reason for the delivery of the deeds to Budd, and he speaks of their delivery at different times, but I take the fact to be that they were all delivered at the same time, in March, and that the contract between him and Budd was the cause that he did not receive them. This, as he paid almost the whole consideration, and owned two-thirds, is the only rational mode of accounting for their delivery to Budd. Thus, according to Tufft, the matter rested till March, 1818, when Budd became insolvent.

But Joshua Brick (who knows nothing of a conveyance by Tufft to Budd of the two-thirds of the lands in Sussex) in his answer to the second cross interrogatory says that he understood from Budd (which information from Budd is introduced

for the better understanding what the witness speaks of his own knowledge) that the consideration of said deed (Tufft to Budd for the two-thirds) was certain lands in Cumberland and Gloucester that Budd had exchanged with Tufft for his two-thirds of the Delaware lands. And then, the witness, speaking of his own knowledge, says, "There was included in the bounds of the land sold or exchanged as above mentioned by Wesley Budd, certain land owned by me, and it was necessary for Budd to obtain a conveyance from me to give John Tufft a title, which conveyance I made to Budd. I suppose this circumstance occasioned the conversation with Budd. I afterwards saw the deed from Budd to Tufft."

So far, as to the defect in the title of the Jersey land, the answer of Tufft and the testimony of Brick correspond; and Brick goes further, and says that he did convey land to Budd to enable him to complete Tufft's title to the Jersey land, and that he afterwards saw the deed from Budd to Tufft. Now this all so agrees with the contract which Tufft says that he made with Budd, that it is difficult to withhold one's assent to the allegation that Tufft conveyed his two third parts of the Sussex lands to Budd. Budd's purchase of Brick can be accounted for fairly enough in this way; and then the deed from Budd to Tufft, which Brick says that he afterward saw, would naturally follow. Tufft has stated no part of this transaction.

Isaac Townsend, in answer to the tenth interrogatory, says that some time in the year 1820 (it may be 1821 in the deposition, for the last figure is blotted) in a conversation with John Tufft, on the subject of a general arrangement with Busti and Vanderkemp, Tufft told this witness that he had given some kind of a writing to Budd respecting the lands in Delaware, but denied its being a deed. They were then speaking about the said lands, and the witness mentioned to him that it was said he had given Budd a deed for them. In the course of this conversation, Tufft observed that the witness knew very well he had not realized much out of the lands in Jersey, which he got of Budd, and he thought he ought to have considerable out of the lands in Delaware. Tufft here admits that he had obtained land in Jersey of Budd. This testimony confirms the testimony of Joshua Brick, and leaves no doubt that Budd did convey land in Jersey to Tufft, and if it were not in exchange for the Delaware lands, it is extraordinary that Tufft has not explained the transaction and shown how, and on what account, Budd conveyed it to him. It is pretty evident that this conveyance from Budd to Tuft grew out of this contract about the conveyance of the Sussex lands to Budd, and connected as it is with their agreement, it seems to be

an execution by Budd of his part of the contract, and begets a violent presumption that Tufft has at some period performed his part of the contract, especially when the testimony of Joseph McIlvaine is considered.

Joseph McIlvaine, who drew the trust deed, in answer to the fourth interrogatory, says that that deed was drawn by him from papers or documents put into his hands by Budd, and his belief is that the said papers or documents were part of the original title deeds, but his memory does not enable him to state their contents or import, either in regard to the parties, or any other particular whatever. The trust deed recites correctly the deeds made by Milby and wife to Tufft and Budd, and from them is copied into that deed the metes and bounds of the several parcels of land, and then it recites that "the said John Tufft and Mary, his wife, by deed dated the 22nd March last past, released and conveyed all his part or share therein to the said Wesley Budd." I do not consider this recital made by Budd, by itself, as evidence of such a deed; but when it is connected with the testimony of Mr. McIlvaine, and is corroborated by the testimony of Mr. Brick and Mr. Townsend, it goes very far to satisfy me that Mr. McIlvaine actually had such a deed before him.

Now, from the whole of this evidence, I think that I am warranted in concluding that Tufft did convey his two-thirds of the lands in Sussex to Budd. It is not so easy to ascertain the precise day of this conveyance, but it may well have been made on or about the 22nd of March. They began their negotiation about the exchange of lands in January, their titles in the Sussex lands were completed by the delivery of all the deeds for them in March, and on or about the 22nd of that month the contract may have been and, most likely was, consummated. Tufft's confidence in Budd had been fully re-established before Milby carried the last deed to Philadelphia in March. But if Tufft never made any such deed, why should he not still make it? Budd purchased land of Brick to perfect his title in the lands which [he] was to convey to Tufft, and he has since conveyed them to Tufft; and Tufft, by his own agreement, is now bound, if no deed has hitherto been made by him, to carry into effect his part of the contract. It is no reason to say that, because he did not realize much out of the Jersey land, he should retain the lands in Delaware.

The next question arises on the deed said to have been made by Budd and wife to Jones. It bears date the 31st March, 1817, a few days after the delivery of the last deed made by Milby and wife to Tufft and Budd. It was made in Jersey, where it was acknowledged on the day of its date before Eli Budd (one of the

subscribing witnesses) a judge of the Inferior Court of Common Pleas in Cumberland County. He could have executed his office nowhere but in Jersey, and from this circumstance it is evident that this instrument of writing must have been signed and sealed in New Jersey. The consideration mentioned is $26,000. This writing was recorded in Sussex March 3, 1819, after the date of the deed made by said Benjamin Jones to Arthur Milby. The complainants object to this deed, for they say that after it was signed and sealed by Budd it was not delivered to Jones, nor to any one on his behalf, but remained in the possession of Budd, and that the contract which gave rise to it was rescinded by Budd to Jones; and that afterward it was by mistake delivered to Jones about March 18, 1818, subsequent to the execution of the trust deed; that the deed remained in Jones's hands unrecorded, and that he never caused it to be recorded, but that it was recorded at the instance of Arthur Milby.

For the better understanding this part of the cause, the following is the chronological order of the several deeds or instruments of writing introduced into it, with the dates of their acknowledgments, proofs, and being recorded in Sussex County:

January 2, 1817. Two indentures. Arthur Milby and Sophie, his wife, to John Tufft and Wesley Budd, acknowledged the same day before Elias Lofland and David Hazzard, two justices of the peace of Sussex County.

March 12, 1817. Indenture. Same grantors to the same grantees, acknowledged the day of its date before the same justices of the peace. These three deeds were delivered on or before March 19, 1817, and were recorded September 9, 1818. The originals are produced here in court and are admitted by all the parties.

March 22, 1817, is said by the complainants to be the date of a deed, Tufft and wife to Budd, for two third parts of the lands and premises conveyed by Milby and wife in the aforesaid three deeds. I refer to the observations heretofore made respecting this deed.

March 31, 1817, is the date of the deed, Budd and wife to Jones. Recorded, March 3, 1819.

June 24, 1817. Bond and warrant of attorney, Budd to Busti and Vanderkemp; penalty, $115,672, conditioned to pay $57,836 in four annual instalments, with interest. The originals are produced and are proved by the subscribing witnesses.

July 21, 1817. Trust deed, Wesley Budd and Sophie, his wife, to Paul Busti and J. J. Vanderkemp. This deed con-

veys the lands in Sussex and several parcels in New Jersey. It recites the above bond, dated as of June 23, 1817. Consideration is said debt and fifty cents. Acknowledged the day of its date before J. McIlvaine, a Master in Chancery, in New Jersey. It recites the three deeds, Milby and wife to Tufft and Budd, and that Tufft and wife by deed dated March 22, 1817, then last past, released and conveyed all their parts or shares of said lands in Sussex to Budd. On this deed are indorsed the memoranda made by Busti and Vanderkemp, allowing Budd to sell all said lands and pay the proceeds to them. Recorded in Sussex, October 27, 1817. The original deed is produced here in court, and has been proved by the subscribing witnesses in virtue of a commission issued by this Court.

March 18, 1818. A copy certified by Benjamin, a notary public, of a deed dated March 18, 1818, Budd to Benjamin. This is Budd's assignment for the benefit of his creditors. This deed was proved before the Mayor of Philadelphia, March 24, 1818, by Andrew Jones, one of the subscribing witnesses. The original is not produced nor any office copy. This copy is not evidence.

December 15, 1818. Deed. Benjamin Jones and Mary, his wife, to Arthur Milby. Consideration, $7000. This deed is for all the lands in Sussex County which Milby and wife conveyed to Tufft and Budd. Acknowledged December 16, 1818, before Robert Wharton, Mayor of Philadelphia, and recorded in Sussex County, January 7, 1819. This has not been proved by the witnesses, or by any of them in this cause. These are all the deeds or instruments which it is necessary here to state. Some others are referred to or mentioned, which, upon examination, afford no light in this cause.

The deeds, Budd and wife to Jones, and Jones and wife to Milby, were made by persons out of the state, and the execution of neither of them has been proved in open court in the county where the lands lie, in the manner required by the Act of the General Assembly for acknowledging and recording deeds, 1 Del. Law 219, s. 3; neither have they, or either of them, been proved by one or more of the witnesses thereto, before the Justices of the Court of Common Pleas or any mayor, chief magistrate, or officer, of the city, town, or county, where they were made and executed, and certified accordingly, as is required by the Supplement to the said Act of the General Assembly, 1 Del.Laws, 308 s. 1; neither have they been proved by any witness examined

in this cause; and, if the objection had been taken, and no admissions made as they have been, they could not have been read in evidence. No power is given to any judge or mayor out of the state to take the acknowledgment of deeds for the conveyance of lands. His only authority is to take the proof of the execution, and he is confined to that, or at least his authority does not exceed that, and every thing else is *coram non judice*. This difference was made because it is easier to personate a supposed grantor out of the state, than falsely to procure witnesses to prove the execution of a deed; and to prevent forged deeds being put on record.

In the case of *Richards et al. v. Judge and Lipple,* in Sussex County, March 14, 1825, a deed acknowledged before the Mayor of Philadelphia and certified under the seal of the City, but not proved before him by one or more of the witnesses, was not allowed to be read in evidence in the Court of Chancery in that county. I have been led into these observations from some remarks in Milby's answer touching some of the papers in this cause. Here, though all difficulty about the deed of Budd and wife to Jones is removed by the admission of the complainants in the bill; for they acknowledge that about March 31, 1817, Budd signed and sealed the said deed, but they say that it was not delivered to Jones until about the 18th March, 1818, and then, that it was delivered by mistake or inattention.

As the signing and sealing is admitted, and as Jones was in possession of the said deed and gave it up to Milby, the mistake in delivering it should have been proved. The possession is *prima facie* evidence that it was delivered according to its import and to the apparent intention of the parties. Milby in his answer does not admit the allegation of the complainants as to the execution of this deed. He says that at the time of his purchase he was ignorant of the manner in which the complainants allege that Jones obtained the possession of the deed. And as to the deed, Jones to Milby, the complainants say that after Jones had obtained said deed of Budd, he was induced, under the color of title apparently given him by the said deed, to convey said eight tracts of land to Arthur Milby, without consideration, or for a very trifling sum. Enough is admitted to allow both of these deeds to be received in evidence. Their effect in this cause is another matter.

This deed of Budd to Jones, it appears from the face of it, was made in Jersey. It is dated within ten or twelve days after Milby's deeds had been delivered to Budd. It was secreted between Budd and Jones from its date until a short time before Jones

made his deed to Milby. Busti and Vanderkemp might well have supposed, when they took the trust deed, if they had previously ever heard or knew of this deed, that the contract upon which it was founded had been annulled, and that the deed itself could have no operation. McIlvaine, though so much concerned in the business relating to the Sussex lands, had no knowledge of it. Cooper never heard of it until after the deed of trust was made (answer to second interrogatory).

And long after the date of said deed, and a short time previous to the trust deed, Budd represented himself to this witness as owner of said lands, and never mentioned any conveyance of them to Jones, or to any other person; and at the same time he offered to sell them as his property. And the witness knows, he says, that Budd represented the said lands as his property to the complainants when he conveyed them by the trust deed. And two or three days after Budd's failure this witness had a conversation with Jones, in which he mentioned to Jones Budd's offer to sell certain lands of Jones to the witness, and Jones said he had authorized Budd to make the offer and to sell his lands, and he mentioned certain lands which he had taken as a security from Budd, all which were situate in New Jersey, and Jones said nothing about the lands in Delaware. Here was a plain fraud attempted by Budd on Cooper, and not discouraged by Jones, if either designed to avail himself afterward of the deed made by Budd to Jones; and that such would have been the result, could that deed have been brought into operation, may be judged of by this present controversy.

Isaac Townsend says, in answer to the eighth interrogatory, that Jones told him he considered this deed as of little or no value, and therefore he had not put it on record. He stated that he knew of the conveyance to Busti and Vanderkemp; that knowing of this conveyance, he had never put the deed on record. And in answer to the ninth interrogatory, this witness says that Budd told him that he made said conveyance to answer certain purposes, and that he never received any consideration therefor; but he did not state what the purposes were. And Budd further said that the papers were taken out of Jones' hands to make the conveyance to Busti and Vanderkemp.

These declarations of Budd and Jones, and the facts they disclose, when brought distinctly into view, and when they are connected with the conveyance to Milby, present a gross and palpable case of fraud in Budd and Jones. First, the deed was concealed from its date until after the conveyance made to Busti and Vanderkemp, and a little previous to the conveyance to Milby;

and its origin, no doubt, was fraudulent. Secondly, Budd represented these lands as his own property, when he conveyed it to complainants. Thirdly, Jones knew of the conveyance to Busti and Vanderkemp, and therefore he did not record the deed, but he stood by and saw that conveyance made, or knew of it, without uttering a syllable against it; and with all this knowledge he had the hardihood to make a deed for these lands to Milby.

A conveyance obtained by fraud is the same in equity as if no conveyance had ever been made. 1 Vern. 443, 445. So if a person having a right to an estate, permit, or encourage a person to buy it of another, such purchaser shall hold against him who has the right. 1 Eq.Cas.Abr. 356, pl. 8, 10. Even a silent permission is sufficient for a court of equity to prevent such person from exercising his legal right. There is no principle better settled than that a court of equity will not permit a person who has stood by and seen or known a person to purchase property without objection, afterward to set up a claim to wrest that property from him. See the cases referred to in 1 Madd.Ch. 209, 210 etc.; *Wendell v. Van Renselaer,* 1 Johns.Ch. 344; *Heginbotham v. Burnet,* 5 Johns.Ch. 184.

Milby admits in his answer "that, before he made the purchase of said Benjamin Jones, he had been informed that a writing purporting to be a trust or mortgage deed from the said Budd and wife to the complainants for the lands and premises aforesaid, and purporting to bear date on the 21st July, 1817, had been placed on the record in the office for recording of deeds in and for Sussex County; but he says that at the time of his purchase he was ignorant of the manner in which complainants allege that Jones obtained the deed of Budd of the 31st March, 1817, and that if the same remained in possession of Budd after its date, he was never informed of it until he found it so stated in the bill of complaint, and therefore he says that he is a purchaser for a valuable consideration without notice.

Milby has not denied that he had notice of the trust deed; but suppose he had only been informed that a writing purporting to be that deed had been recorded, as he states, in Sussex County,—that was enough. It was sufficient to put him upon an inquiry. In *Smith v. Low,* 1 Atk. 489, Lord Hardwicke says, what is sufficient to put the party upon an inquiry is good notice in equity. And in *Sterry v. Arden,* 1 Johns.Ch. 261, Chancellor Kent delivered the same opinion. As to Milby's ignorance of the manner in which the complainants allege that Jones obtained the deed of Budd of the 31st March, 1817, and that if the same remained in the possession of Budd after its date, he was never in-

formed of it until he found it so stated in the bill of complaint, it was of no consequence that [he] should have been previously informed how, or in whatever the complainants alleged these facts. The facts themselves were the important matters, and when Milby was apprised that Budd's deed to the complainants was recorded in Sussex County, he had all the information necessary for a prudent man to search into the title and to guard against that deed, if he chose to make the purchase. He took his title under Jones, vitiated with the fraud of concealment and of the knowledge Jones had of the conveyance to Busti and Vanderkemp, and with Jones permitting them to take that deed without any objection, or even intimation to them that he had title to said lands by a prior, good and subsisting conveyance; whereas he might have avoided the purchase, if he had made the inquiry which the information he received should have led to, and which a prudent man, not speculating in titles, would have done.

I have not noticed all that the depositions state of Milby's knowledge of this transaction. Much of it is hearsay and therefore has not been taken into consideration. What the witnesses prove of their own knowledge of the declarations of Budd and Jones, as to facts stated by them in relation to themselves, is competent testimony.

Let the decree direct Tufft to convey to the complainants two undivided third parts of said lands and premises in Sussex County; that Milby convey to complainants all his estate in said lands and premises; and that he account for the rents and profits since March 19, 1817, and for all wood, timber and trees cut upon said premises and sold or carried off for sale since the day aforesaid; and that he state and show in said account all payments made by Tufft and Budd, or by either of them, on account of the purchase of said lands and premises, and the balance still due to him of the purchase money, if any. (Was any coal burnt?)

The decree is to reserve to the Chancellor to make further and other decree, etc. This may be to deliver possession. The land must be held as security for any balance of purchase money that may be found due to him.